UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:17-CV-00101-GNS-HBB

STACEY MORRIS                                                                        PLAINTIFF

v.

RUSSELLVILLE INDEPENDENT
BOARD OF EDUCATION                                                                  DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant's Motion for Summary Judgment (DN 37). This matter is ripe for adjudication. For the reasons outlined below, the motion is **GRANTED**.

I.     **STATEMENT OF FACTS AND CLAIMS**

In 2010, Plaintiff Stacey Morris ("Morris") began working for Defendant Russellville Independent Board of Education ("Board"). (Compl. 1, DN 1; Smith Decl. ¶ 3, DN 37-5). Since 2011, Morris has held the position of instructional assistant or teacher's aide at the Alternative School. (Smith Decl. ¶ 3).

Sometime in 2012, Morris expressed his aspiration to become a special education teacher. (Compl. 1; Smith Decl. ¶ 4). In Kentucky, school positions are designated as either classified or certified. Certified personnel are teachers who are certified by the Education Professional Standards Board ("EPSB").[1] *See* KRS 161.155(1)(a); *see also* KRS 161.020(1)(a) ("No person shall be eligible to hold the position of superintendent, principal, teacher, supervisor, director of pupil personnel, or other public school position for which certificates may be issued, or receive

---

[1] The EPSB "is the agency in Kentucky that establishes and certifies standards and requirements for obtaining and maintaining a provisional license to teach in the public school districts in Kentucky." (Adams Decl. ¶ 3, DN 37-6).

1

salary for services rendered in the position, unless he or she holds a certificate of legal qualifications for the position, issued by the Education Professional Standards Board."). Kentucky law defines as "classified employee" as "an employee of a local district who is not required to have certification for his position as provided in KRS 161.020 . . . ." KRS 161.011(1)(a). It is undisputed that Morris is a classified employee—not a certified employee—of the school district. (Pl.'s Resp. Def.'s Req. Admis. Nos. 2-4, DN 37-3; Smith Decl. ¶ 4).

In 2012, an alternative school teacher was promoted to the position of Assistant Principal at Russellville Middle School. (White Decl. ¶¶ 3-4, DN 37-4). When that vacancy occurred, Morris expressed interest in that position to Superintendent Leon Smith ("Smith"). (Compl. 1). Morris, however, was not qualified to obtain certification based on his undergraduate grade point average or to pursue the alternative route to certification. (Smith Decl. ¶¶ 4-6, 9; Adams Decl. ¶¶ 10-12). While Morris contends that a Caucasian male, Peter Ries ("Ries"), was selected for the position, the identified applicant applied for a *different* position and was able to satisfy the qualifications to be a certified employee. (Smith Decl. ¶ 6). Unlike Morris, Ries is certified by the EPSB. (Ries Dec. ¶¶ 2-3, DN 37-11; Adams Decl. ¶ 9).

In the fall of 2014, Morris had a disagreement with Ries, who also served as the middle school's head football coach, relating to the team's attendance at the middle school football playoffs. (Compl. 2; Ries Decl. ¶ 4). Ries had decided that the team would not be participating because of the competitiveness of the games and that participation in the playoffs would shorten the team members' fall break. (Ries Decl. ¶ 4). Morris asserts that his disagreement with this decision led to retaliation against him. (Compl. 2).

From February 2015 to April 2015, Morris served as an assistant coach with the boys' high school track and field team. (Compl. 2; Head Decl. ¶ 3, DN 37-10). According to Morris, the

2

position was supposed be paid, but when he requested compensation the Athletic Director, Calvin Head, informed him that it was an unpaid position because the Board had not allocated funding.[2] (Compl. 2; Head Decl. ¶ 4.).

On August 5, 2015, Morris had a conversation with Superintendent Smith in which Morris contends that he voiced his concerns "about not being treated fair (discriminated) on the job by administration (advancements and pay) and being bullied and harassed by Mr. Ries . . . ." (Compl. 2). Based on that meeting, he alleges that "[his] job duties were diminished and continued to be stripped through 2016. In addition, [his] football coaching position that [he] had held since 2011 was terminated in 2015)." (Compl. 3).

Morris alleges that several weeks after that meeting with Smith, Smith encouraged him to find another job. (Compl. 3). Smith recalls that meeting differently. According to Smith, Morris expressed his unhappiness with his job and encouraged Smith to fire him so Morris could collect unemployment. (Smith Decl. ¶ 8). Smith encouraged Morris to pursue a master's degree to be eligible for other positions. (Smith Decl. ¶ 8).

On August 26, 2016, Morris filed a charge with the EEOC alleging race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2000e-17. (EEOC Charge Discrimination 1, DN 37-3). On March 28, 2017, the EEOC issued its Dismissal and Notice of Rights regarding Morris' charge. (Compl. Ex., DN 1-2).

On November 18, 2016, Smith wrote a letter to Morris regarding Morris' conduct on November 16, 2016. (Compl. 3; Smith Decl. Ex. 1, at 2-3, DN 37-5). Morris' son had been suspended for allegedly "raising his voice and using profanity during a discussion with Athletic

---

[2] Head Track Coach Dennis Sydnor ("Sydnor"), who is also African-American, informed Morris that the position was unpaid and that Sydnor would seek funding for the position. (Sydnor Decl. ¶¶ 3-4, 8-9, DN 37-9). Sydnor was unsuccessful in that endeavor. (Sydnor Decl. ¶ 5).

3

Director Calvin Head . . . ." (Compl. 3). According to Morris, Vice Principal Brandon Blake ("Blake") directed Morris to stay in Blake's office to discuss the son's conduct. (Compl 3). In the letter, Smith stated that Morris was absent from his classroom duties for more than an hour and that Morris had improperly removed his son from class. (Smith Decl. ¶ 7; Smith Decl. Ex. 1, at 2). The letter also noted that the purpose of the meeting in Blake's office was to discuss the academic ineligibility of Morris' son due to two failing grades, which caused the son to miss a football game. (Smith Decl. Ex. 1, at 2).

On June 1, 2017, Morris filed this action alleging racial discrimination and retaliation in violation of Title VII. (Compl. 1-4, DN 1). Following discovery, the Board seeks dismissal of Plaintiff's claims. (Def.'s Mot. Summ. J., DN 37).

## II.     JURISDICTION

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because a federal question is presented.

## III.     STANDARD OF REVIEW

In ruling on a motion for summary judgment, the Court must determine whether there is any genuine issue of material fact that would preclude entry of judgment for the moving party as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of stating the basis for the motion and identifying evidence in the record that demonstrates an absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party satisfies its burden, the non-moving party must then produce specific evidence proving the existence of a genuine dispute of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

While the Court must view the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show the existence of some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted). Rather, the non-moving party must present specific facts proving that a genuine factual dispute exists by "citing to particular parts of the materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient" to overcome summary judgment. *Anderson*, 477 U.S. at 252.

## IV.     DISCUSSION

In its motion, the Board seeks summary judgment on all of Morris' claims.[3] (Def.'s Mem. Supp. Mot. Summ. J. 6-20, DN 37-1). The Board contends that it is entitled to judgment in its favor because the claims are untimely and, even if timely, Morris has failed to prove his claims. (Def.'s Mem. Supp. Mot. Summ. J. 6-20).

### A.     **Racial Discrimination**

Under Title VII, it is unlawful for any employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). Here, Morris contends

---

[3] The only evidence to which Morris cites in opposing the motion are the declarations tendered by the Board in support of its motion. Arguments made by Morris in his response are not evidence. *See Williams v. Steak 'N Shake*, No. 1:13-CV-00145-GNS-HBB, 2015 WL 1638278, at *2 (W.D. Ky. Apr. 13, 2015) (citation omitted). Similarly, "[g]eneral assertions of fact issues, general denials, and conclusory statements are insufficient to shoulder the non-movant's burden." *Chem. Eng'g Corp. v. Essef Indus., Inc.*, 795 F.2d 1565, 1571 (Fed. Cir. 1986).

that Defendant discriminated against him by failing to promote him and compensate him for serving as the assistant track coach.[4] (Compl. 1-2).

### 1. *Statute of Limitations*

As a preliminary matter, the Court must determine whether Morris timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") relating to these alleged acts of discrimination. To assert a claim under Title VII, a plaintiff must timely file a charge with the EEOC within 300 days of the occurrence of the unlawful employment practice. *See* 42 U.S.C. § 2000e-5(e)(1); *Vaughn v. Louisville Water Co.*, 302 F. App'x 337, 343 (6th Cir. 2008) (citation omitted).

In this case, Morris filed the charge on August 26, 2016. (Charge Discrimination 1). Thus, pursuant to 42 U.S.C. § 2000e-5(e)(1), the charge was timely for any discrete act of discrimination that occurred no earlier than October 31, 2015—300 days before he filed the charge. In the charge and the Complaint, Morris references not being considered for a position in 2012. (Charge Discrimination 1; Compl. 1-2). In the Complaint, Morris also alleges that he was not paid for serving as assistant track coach in spring 2015 and was terminated from his football coaching responsibilities in 2015.[5] (Compl. 2). All of these alleged discrete acts of racial discrimination,

---

[4] Morris has also alleged that he unsuccessfully applied twice for the position of girls' head football coach. (Pl.'s Answer Interrog. No. 12, DN 37-2). The school, however, does not have a girls' football team. (Head Decl. ¶ 5).
[5] According to Ries, he discussed Morris' service as an assistant football coach at the end of the 2014-15 school year. (Ries Decl. ¶ 5). Ries has stated that Morris agreed to step down because Morris' son would be starting high school in the fall of 2015 and would no longer be playing on the middle school team. (Ries Decl. ¶¶ 5-6). While Morris recalls that conversation differently, he has not pointed to any evidence in the record contradicting that the conversation occurred on July 27, 2015, which is more than 300 days prior to the filing of the charge with the EEOC. (Pl.'s Answer Interrog. No. 12).

however, would have occurred prior to October 31, 2015. Accordingly, any Title VII claims based on those acts would be barred by the applicable statute of limitations.

### 2. *Equitable Estoppel, Equitable Tolling, and Waivers*

Morris contends, however, that the statute of limitations should be tolled by equitable estoppel, equitable tolling, and waiver. (Pl.'s Resp. Def.'s Mot. Summ. J. 16). As the Supreme Court held in *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982), "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Id.* at 393. However, "[o]ne who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence." *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984); *see also Smith v. Postmaster Gen., U.S. Postal Serv.*, No. 1:08-CV-390, 2011 WL 13202371, at *7 (S.D. Ohio May 3, 2011) ("[T]he Supreme Court has made clear that 'tolling in a Title VII context should be allowed "only sparingly."' Equitable tolling is therefore available only in compelling cases that justify a departure from established procedure." (internal citation omitted) (citing *Steiner v. Henderson*, 354 F.3d 432, 435 (6th Cir. 2003))).

As the party seeking to preclude the running of the statute of limitations, Morris bears the burden of proving that equitable estoppel, equitable tolling, or waiver precludes the dismissal of the Title VII discrimination claim. *See Hardy v. Potter*, 191 F. Supp. 2d 873, 879 (E.D. Mich. 2002) (citation omitted) (equitable tolling); *Banks v. Commissioner*, 345 F.3d 373, 387 (6th Cir. 2003), *rev'd on other grounds*, 543 U.S. 426 (2005) (citation omitted) (equitable estoppel); *Johnson-Brown v. Wayne State Univ.*, 173 F.3d 855, 1999 WL 191322, at *2 (6th Cir. 1999) (citation omitted) (waiver). Here, Morris relies on an alleged statement made by Paulette Smith, whom he identifies as "the outgoing Alternative School teacher at Defendant Russellville . . . ."

7

(Pl.'s Resp. Def.'s Mot. Summ. J. 16). She allegedly told Morris to "'hang in there,' and to await additional job opportunities." (Pl.'s Resp. Def.'s Mot. Summ. J. 16). Morris, however, does not cite to any evidence in the record that this statement was made, which is insufficient to defeat this motion. *See Williams*, 2015 WL 1638278, at *2; *Chem. Eng'g Corp.* 795 F.2d at 1571. Absent any admissible evidence, it is unnecessary to analyze the individual elements of these defenses, and Morris has failed to meet his burden.

For these reasons, Morris filing of the charge with the EEOC was untimely, and his Title VII claim is time-barred. Accordingly, the Court will grant summary judgment for Defendants on that claim.

### B. Retaliation

Defendant also moves for summary judgment on Morris' retaliation claim. (Def.'s Mem. Supp. Mot. Summ. J. 12-14, 16-18). Title VII also "prohibits an employer from retaliating against an employee who has 'opposed' any practice by the employer made unlawful under Title VII; and prohibits an employer from retaliating against an employee who has 'participated' in any manner in an investigation under Title VII." *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 578 (6th Cir. 2000). As alleged in the Complaint, Morris was subjected to retaliation in 2014, 2015, and 2016. (Compl. 2).

#### 1. *Statute of Limitations*

Like Morris' racial discrimination claim, his retaliation claim is subject to the same 300-day statute of limitations. *See* 42 U.S.C. § 2000e-5(e)(1). Thus, as a preliminary matter, the Court must determine whether any of the alleged acts of retaliation are barred by this statute of limitations because they occurred prior to October 31, 2015.

In his response, Morris states:

> The Plaintiff voiced his concerns over his treatment at the hands of Mr. Reis to Superintendent Smith on or about August 5, 2015. During this meeting, the Plaintiff voiced his concerns over the lack of advancement opportunities, his denial of access to teaching positions, and his concerns over the conduct of Mr. Reis. The Plaintiff further explained that he had previously voiced these concerns to both Principal McDaniels and Vice Principal Blake. Mr. Smith did not reveal whether he had been made aware of the Plaintiff's prior reports of harassment and retaliation. What followed, however, was a diminution of the workplace responsibilities of the Plaintiff both within the classroom and in the context of extracurricular activities. After raising concerns to Superintendent Leon Smith about unfair treatment, Plaintiff Morris' job duties were almost immediately diminished. It is worth noting that following the Plaintiff's August 5th meeting with Superintendent Smith and the report of mistreatment, an event occurred on August 7, 2015 that typified the degree and nature of Mr. Reis' abhorrent conduct toward the Plaintiff. On that date, Mr. Reis abandoned his class and left the Plaintiff in the midst of a disruptive group of students. This occurred just as senior school officials entered the class and observed the session in near chaos. It is the Plaintiff's position that this conduct by Mr. Reis was done purposefully, and with the intent of making the Plaintiff appear incompetent in the eyes of senior school officials.

(Pl.'s Resp. Def.'s Mot. Summ. J. 8-9). Morris also avers that "[f]ollowing these conversations [with school officials on or before August 5, 2015)], Mr. Morris suffered a series of dilution and diminution of his workplace duties and responsibilities; culminating in his loss of a coaching position and exclusion from the athletic Hall of Fame." (Pl.'s Resp. Def.'s Mot. Summ. J. 23).

In Morris' response, the only arguably protected activity identified in 2015 was the meeting with Smith on August 5, 2015. (Pl.'s Resp. Def.'s Mot. Summ. J. 23-24). Thus, any of allegedly discriminatory conduct occurring prior to that date cannot support a claim of retaliation. Likewise, any retaliatory conduct occurring prior to October 31, 2015, is time-barred, and to the extent that this claim is based on time-barred conduct, the claim is dismissed.

2. *Merits*

Assuming arguendo that Morris has timely asserted a claim for retaliation, Morris has not identified any direct evidence of retaliation. Because Morris is relying on circumstantial evidence, the Court will apply the burden shifting framework articulated in *McDonnell Douglas v. Green*,

411 U.S. 792 (1973), in analyzing this claim. *See Scott v. Donahoe*, 913 F. Supp. 2d 355, 364 (W.D. Ky. 2012) (citing *Chen v. Dow Chem., Inc.*, 580 F.3d 394, 402 (6th Cir. 2009)).

To prove a prima facie claim of retaliation under Title VII, Morris must prove that: "(1) he engaged in activity protected by Title VII; (2) the exercise of his civil rights was known to the defendant; (3) thereafter, the defendant took an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000) (citation omitted). "The burden of establishing a prima facie case is not an onerous one." *Lewis-Smith v. W. Ky. Univ.*, 85 F. Supp. 3d 885, 906 (W.D. Ky. 2015) (citing *Nguyen*, 229 F.3d at 563). Morris, however, cannot satisfy all elements, which warrants dismissal of this claim.

In his response, Morris argues that he was ostracized, which is insufficient alone to meet his burden. Without citing to any evidence in the record, he contends that he "was effectively ostracized by senior school officials. Superintendent Smith and a Mr. James Mellam (another senior employee within the district,) [sic] individuals with whom the Plaintiff had previously enjoyed a cordial working relationship, stopped speaking to him." (Pl.'s Resp. Def.'s Mot. Summ. J. 11). Such general allegations without more, however, are insufficient to prove a prima facie case of retaliation. *See Wierengo v. Akal Sec., Inc.*, 580 F. App'x 364, 373 (6th Cir. 2014) ("She does not provide many examples of this 'shunning.' From her affidavit, it seems like the majority of the 'shunning' consisted of coworkers avoiding her during the work day. But '[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience.'" (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006))); *Morgan v. Cent. Baptist Church of Oak Ridge*, No. 3:11-CV-124-TAV-CCS, 2013 WL 12043468, at *16 (E.D. Tenn. Dec.

5, 2013) ("[T]he Court finds that Plaintiff's claim that she was ostracized by her coworkers following her charges of discrimination does not rise to the level of an adverse employment action under Sixth Circuit law. Plaintiff alleges that coworkers were told not to talk to her, and that she was not given Christmas cards and gifts, and no birthday cards and gifts, while others were given them. But these actions did not affect her wage or salary, result in a less distinguished title or loss of benefits, and cannot constitute badgering, harassment or humiliation.").

In addition, Morris cannot rely on his alleged exclusion from the Russellville Alumni Association Athletic Hall of Fame ("RAAAHF") to prove a prima facie case of retaliation. This allegation was not raised in the Complaint or in his discovery responses. Instead, Morris raises this allegation only in response to the present motion. (Pl.'s Resp. Def.'s Mot. Summ. J. 11, 23). Morris does not provide specific details including *who* made that decision and *when* that decision was made and has not cited to any evidence in the record in support of this naked allegation. As Defendant has noted, however, the RAAAHF was formed by alumni without any funding or oversight from the Board. (Owens Decl. ¶¶ 3-4, DN 49-1). The Board has no involvement in the selection process, and Morris' brother and cousin are prior inductees of the RAAAHF. (Owens Decl. ¶¶ 8, 11). Thus, Morris cannot prove that the Board took an adverse employment action against him to support his retaliation claim.

"To establish the causal connection required in the fourth prong, the plaintiff must produce sufficient evidence 'from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not' engaged in protected activity." *Id.* at 910 (citations omitted). "While temporal proximity between an assertion of Title VII rights and an adverse employment action provides highly probative evidence of a causal connection, 'temporal proximity alone will not support an inference of retaliatory discrimination when there is no other compelling

evidence.'" *Arendale v. City of Memphis*, 519 F.3d 587, 606 (6th Cir. 2008) (quoting *Nguyen*, 229 F.3d at 566).

The only specific date that Morris has provided after October 31, 2015, relates to the letter he received from Smith dated November 18, 2016. From a temporal proximity standpoint, that letter—even assuming that it could be characterized as an adverse employment action—is too remote in time because it occurred more than 15 months after the August 5, 2015, meeting with Smith. *See, e.g.*, *Cooper v. City of N. Olmsted*, 795 F.2d 1265, 1272 (6th Cir. 1986) (concluding that an employee's discharge four months after filing a discrimination claim lacked temporal proximity to support an inference of retaliation).

To the extent that Morris argues that Smith's November 18, 2016, letter was in retaliation for the filing of the charge, that letter was sent almost than three months after the charge, which may close enough in time to create an inference of retaliation. *See Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 563 (6th Cir. 2004). The genesis for that letter, however, was Morris being away from his classroom during the workday. Neither party disputes that this event occurred.

As this Court has noted, "[t]he Sixth Circuit 'has previously held that "an intervening legitimate reason" to take an adverse employment action 'dispels an inference of retaliation based on temporal proximity.'"" *Lewis*, 85 F. Supp. 3d at 911 (quoting *Kuhn v. Washtenaw Cty.*, 709 F.3d 612, 628 (6th Cir. 2013)). Morris' absence from his assigned classroom to address his son's academic issues qualifies as an intervening event for which the Smith could have disciplined him. *See Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 472 (6th Cir. 2012) ("The timeline of events in this case extinguishes any inference based on temporal proximity. Wasek's decision to leave the worksite was an intervening event. He left after his last complaint to his supervisors and before he was banned from Pennsylvania. Arrow Energy thus had an intervening legitimate reason to

discipline him, and that reason dispels an inference of retaliation based on temporal proximity." (citation omitted)). Thus, this event dispels any inference based on temporal proximity that Smith's letter was in retaliation for the filing of the charge with the EEO. *See Lewis-Smith*, 85 F. Supp. 3d at 911-12.

For these reasons, Morris has failed to prove a prima facie case of retaliation. The Court will grant summary judgment for the Board on this claim.

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (DN 37) is **GRANTED**, and the Complaint (DN 1) is **DISMISSED WITH PREJUDICE**.

Greg N. Stivers, Chief Judge
United States District Court

April 23, 2019

cc: counsel of record